UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

EDWARD BEALL,                         )
                                      )
       Plaintiff,                     )
                                      )
VS.                                   )     CIVIL ACTION NO.
                                      )
A2Z LIMOUSINE TRANS and JIMMY         )     3:18-CV-0194-G
CHARDY,                               )
                                      )
       Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion for summary judgment filed by the defendants A2Z Limousine Trans ("A2Z") and Jimmy Chauhdry[1] ("Chauhdry") (collectively "defendants"). Defendants' Motion and Brief for Summary Judgment ("Motion") (docket entry 97). For the reasons stated below, the motion is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

The plaintiff Edward Beall ("Beall") alleges the following facts.

---

[1] Both the plaintiff and the defendants refer to Jimmy Chauhdry as "Jimmy *Chardy*" in various filings. Mr. Chauhdry's sworn affidavit, however, states that his last name is "*Chauhdry*." Accordingly, the court refers to the individual defendant as Jimmy Chauhdry.

Beall is an African American man. A2Z is a company that operates in Dallas, Texas and provides limousine and party bus rental services, among others. Plaintiff's Original Complaint ("Complaint") (docket entry 3) at 3. On or about November 8, 2013, Beall began work as a limousine, party bus, and specialty driver at A2Z. *Id.* Beall was hired by Chauhdry, who Beall alleges was the owner and CEO of A2Z. *Id.*

In or around December, 2013, A2Z had a four-day job with an important client, Coco Chanel (the "Chanel assignment"). *Id.*; Plaintiff's Supplemental Motion in Support of Answers to Magistrates [*sic*] Questionnaire ("Plaintiff's Supplemental Briefing") (docket entry 9) at 9.[2] Beall received itinerary sheets that listed the times and places at which he was to pick up and drop off various persons during the course of the Chanel assignment. *Id.* at 10. Beall took pictures of his itinerary sheets on his mobile phone. *Id.*

On the final day of the Chanel assignment, Chauhdry asked Beall to come to work early the following morning—at around 3:00 AM—to take some of A2Z's clients to the airport. Complaint at 3. Beall arrived at work, but the clients did not show up. *Id.* Beall called Chauhdry several times and waited at work for about three hours before Chauhdry returned his call. *Id.* Chauhdry told Beall to "forget it and leave." Plaintiff's Supplemental Briefing at 10.

---

  [2]  Citations to docket entry 9 refer to the page numbers at the top of the page.

- 2 -

At the end of the following pay period, Beall's paycheck was short by at least $100. Complaint at 4. Beall called Chauhdry to dispute the amount of the paycheck, and Chauhdry told Beall to come into the office the next day to resolve the dispute. *Id.* Beall went to the office the following day and presented his check to Chauhdry, who stated that the amount on the check was correct. *Id.* Beall objected and proceeded to show Chauhdry the pictures of Beall's itinerary sheets from the Chanel assignment, as evidence of the hours that Beall had worked. *See id.*; Plaintiff's Supplemental Briefing at 10.

Beall alleges that Chauhdry then became incensed. Chauhdry stated that Beall was lying, and that Chauhdry would not pay Beall any more money. Complaint at 4. Beall again objected and again showed Chauhdry the pictures documenting his work from the previous pay period. *Id.* Beall alleges that the following colloquy ensued:

> Chauhdry:   "Ni**er I paid you."
>
> Beall:      "What did you just say to me?"
>
> Chauhdry:   "Ni**er you got paid and you['re] fired get out!"

*Id.* Beall subsequently filed complaints with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"), alleging race-based discrimination. *Id.*

Beall asserts that he was terminated due to a combination of his race, skin color, and national origin. Beall alleges that he had witnessed Chauhdry call other

African American male employees of A2Z "ni**er" and fire them as well, but that A2Z's "Hispanic," "Anglo Saxon," and "Middle [E]astern" employees were not treated or fired in this manner. *Id.*

Beall, who is prosecuting his case *pro se*, filed his original complaint on January 25, 2018. Complaint. On January 29, 2018, United States Magistrate Judge David L. Horan ordered Beall to respond to a series of four questions by "verfiy[ing] the answers to these questions under penalty of perjury." Magistrate Judge's Questionnaire to the Plaintiff (docket entry 7) at 1. On February 9, 2018, Beall timely filed answers to the questionnaire, which he verified under penalty of perjury. *See* Plaintiff's Supplemental Briefing. Beall's complaint, as clarified by his supplemental briefing, contains two claims: (1) retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) race-based discrimination, in violation of Title VII. *See id.* at 11; Complaint at 5.

On March 13, 2018, the defendants answered and contended as follows.

> In response to Paragraph 1 of the Complaint, Defendants state that this court does not have jurisdiction under 28 USCS §331, 42 USCS §2000e Title VII of the Civil Rights Act 1964 14th Amendment as Defendants have less than five employees and of course less than the statutory threshold of fifteen employees. Plaintiff was not an employee of either Defendant, and there is no showing of interstate commerce, and aver that this constitutes a complete defense.

Defendants' Answer and Affirmative Defenses to the Original Complaint (docket entry 15) at 1. Despite these assertions, the defendants neither moved to dismiss the

- 4 -

plaintiff's claims nor for summary judgment, and this case languished on the court's docket with little activity until the court ordered the defendants on May 7, 2020 to raise their defenses in a motion for summary judgment. *See* Order (docket entry 96) at 2.

The defendants filed their motion for summary judgment on May 18, 2020, asserting that they cannot be held liable under Title VII because they do not qualify as employers under the statute. *See* Motion at 1. On June 2, 2020, the plaintiff filed his response in opposition to the motion, Plaintiff[']s Objection to Defendants[']s Motion for Summary Judgment ("Response") (docket entry 98), and on June 10, 2020, the defendants filed a reply in support of their motion (docket entry 99). Accordingly, the defendants' motion for summary judgment is fully briefed and ripe for determination.

## II. APPLICATION

### A. Summary Judgment Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[3] A fact is material if the governing substantive

---

[3] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190,

law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation*

---

1197 (5th Cir. 1986).

*v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

B. Analysis

1. *The Defendants' Motion Is Granted with Respect to Beall's Claims Against Chauhdry*

Although the defendants do not raise this point in their motion, the court notes that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)). The court therefore concludes that Chauhdry is entitled to judgment as a matter of law and that there is no dispute as to any material fact with respect to Beall's claims against Chauhdry. See *Madathil v. Accenture LLP*, No. 4:18-CV-511-ALM-CAN, 2019 WL 2913308, at *8 n.7 (E.D. Tex. May 29, 2019), report and recommendation adopted, No. 4:18-CV-511, 2019 WL 2905037 (E.D. Tex. July 5, 2019) (finding that a plaintiff's claims against individual supervisors failed where the plaintiff also named the company that employed the plaintiff as a defendant). Accordingly, the court grants summary judgment in favor of the defendants on Beall's claims against Chauhdry.[4]

---

[4] The court also notes that Beall's response refers to Raja Chauhdry ("Raja") in several instances. Raja is purportedly the brother of Jimmy Chauhdry

2.  *The Defendants' Motion Is Denied with Respect to Beall's Claims Against A2Z*

The defendants assert that A2Z cannot be held liable under Title VII because A2Z does not qualify as an "employer" under Title VII.  "To spare very small businesses from Title VII liability, Congress provided that: '[t]he term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  *Arbaugh v. Y&H Corporation*, 546 U.S. 500, 504-05 (2006) (quoting 42 U.S.C. § 2000e(b)).

The burden of proving that a defendant qualifies as an "employer," and may thus be subject to liability under Title VII, falls on the plaintiff.  See *Taylor v. Cardiology Clinic, Inc.*, 195 F. Supp. 3d 865, 869-70 (W.D. Va. 2016) (quoting *Wilson v. Comtrust LLC*, 249 F. Supp. 2d 993, 997 (N.D. Ill. 2003) (internal quotations omitted)) ("A plaintiff 'bears the burden of proving the number of employees, including the duration of their employment, with some element of precision.'"); see also *Grimsley v. Methodist Richardson Medical Center Foundation, Inc.*, No. 3:09-CV-2011-D, 2011 WL 825749, at *3 (N.D. Tex. Mar. 3, 2011) (Fitzwater,

---

and a principal of A2Z.  Beall filed a motion for leave to join Raja as a defendant on June 12, 2018 (docket entry 40), which the court granted on November 16, 2018 (docket entry 67).  To date, however, Beall has not filed a proof of service of summons as to Raja.  Accordingly, Raja has not been properly joined as a defendant in this case.  Furthermore, even had Raja been joined as a defendant, he could not be held liable under Title VII in his individual or official capacity.  See *Ackel*, 339 F.3d at 382 n.1.

Chief J.) (holding that the burden of establishing a defendant's employer status under the ADEA falls on the plaintiff).  Because A2Z would not have the burden of proof on Beall's claims at trial, A2Z may meet its summary judgment obligation by pointing the court to the absence of evidence to support Beall's claims.  See *Celotex Corporation,* 477 U.S. at 325.  Once A2Z does so, "[Beall] must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial." *Grimsley*, 2011 WL 825749, at *3 (citations omitted).

      The defendants raise three arguments as to why A2Z should not be considered an employer under Title VII.  First, the defendants assert that A2Z did not have at least fifteen employees during or in the year preceding Beall's tenure at A2Z; second, the defendants assert that Beall was not an A2Z employee; and third, the defendants assert that A2Z does not engage in interstate commerce.  Motion at 1.  The court considers each argument in turn.

      a. *Title VII's Numerosity Requirement*

      The defendants assert that A2Z has never employed 15 or more employers, and thus, that the company cannot be held liable under Title VII.  "In order to be subject to liability pursuant to Title VII, an employer must have at least fifteen employees 'for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.'" *Juino v. Livingston Parish Fire District No. 5,* 717 F.3d 431, 434 (5th Cir. 2013) (quoting 42 U.S.C. § 2000e(b)).

Here, the defendants' anemic one-page summary judgment brief states: "Under Plaintiff's claim must have at least fifteen employees [*sic*]. Defendants aggregated had less than five employees." Motion at 1. This two sentence argument is supported by the defendants' similarly sparse summary judgment evidence, which is comprised entirely of the one-page affidavit of Jimmy Chauhdry. Chauhdry's affidavit states: "A2Z Limousine Trans has never had more than five (5) employees at any time since its inception[.]"

In response, the plaintiff contends that A2Z did in fact have at least 15 employees at the time of his termination. Beall supports his assertion by reference to two documents attached to his response. First, Beall points to a document that is purportedly from the website of the Better Business Bureau, which indicates that in December 2013, A2Z had between "50 to 99" employees. Response at 9, 46. Second, Beall points to a document that is purportedly from A2Z's Facebook page, which indicates that in September 2017, A2Z sought to hire front office staff, accounting staff, and "full-time/part-time" drivers. *Id.* at 41. Beall's assertion that A2Z had at least 15 employees at the time of his termination is further bolstered by the EEOC intake questionnaire incorporated in Beall's verified response to the "magistrate judge questionnaire." Beall checked the box on the EEOC questionnaire indicating that his employer (*i.e.*, A2Z) had between 15 and 100 employees. Plaintiff's Supplemental Briefing at 37.

- 10 -

Although the evidence in the record by no means proves that A2Z had at least fifteen employees for each working day in each of twenty or more calendar weeks in 2013 or 2012, the court concludes that there is a genuine issue of fact for trial as to whether A2Z had enough employees to qualify as an employer under Title VII.[5]

b. *Whether an Employment Relationship Existed Between Beall and A2Z*

Next, the defendants assert that Beall was never an employee of A2Z. It is undisputed that Beall worked for A2Z in the colloquial sense; that is, that Beall drove A2Z's customers to and from their destinations and received payment from A2Z for his labors. Though unclear from their motion, the defendants appear to maintain that Beall was an independent contractor rather than an employee.

"In determining employee/independent contractor status, the 'relevant question is whether the alleged employee so economically depends upon the business to which he renders his services, such that the individual, as a matter of economic reality, is not in business for himself.'" *Hobbs v. Petroplex Pipe & Construction, Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) (quoting *Thibault v. Bellsouth Telecommunications,*

---

[5] The court further notes that, in response to Beall's request for disclosure of the list of A2Z "employees and subcontractors from Jan 1, 2012-Jan 1, 2018," A2Z responded: "Objection, ambiguous, irrelevant and will not lead to relevant evidence." Defendants' Response to Beall's Motion to Compel Discovery (docket entry 80) at 7. While Magistrate Judge Horan ultimately denied Beall's motion to compel a list of A2Z's employees from 2012-2018 as not proportional to Beall's claims, the court notes that had A2Z simply provided Beall with a list of its employees from 2012-2013, the issue of how many employees A2Z had for that time period would be much more easily resolved.

*Inc.*, 612 F.3d 843, 845 (5th Cir. 2010)).  Courts in the Fifth Circuit rely on "'five non-exhaustive factors' to guide this inquiry." *Id.* (citing *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008)).  These five "economic realities" "factors are: '(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.'" *Id.* (quoting *Hopkins*, 545 F.3d at 343.).

Here, evidence pertinent to the economic realities factors raises a genuine factual dispute as to whether Beall was an employee of A2Z.

First, with respect to the degree of control that A2Z exercised over Beall, Beall asserts that A2Z controlled his work by telling him when and where to pick up and drop off clients.  In support of this assertion, Beall points to the image of his time sheet attached to his response, which indicates that Beall picked up and dropped off specific clients at specific times in December of 2013.  Response at 3, 9; see *Hobbs*, 946 F.3d at 830 (affirming district court's finding that control factor weighed in favor of employee status based on "evidence that [the defendant] regularly assigned the [plaintiffs]' specific tasks and the hours to be worked.").  The defendants raise no argument as to the level of control that A2Z exercised over Beall.  Accordingly, on

the slim record before the court, the first economic realities factor weighs in favor of a finding that Beall was an employee of A2Z.

The second economic realities factor is neutral; neither the plaintiff nor the defendants have submitted any evidence as to the parties' relative investments in the limousine and party bus service at issue in this case. Although Beall alleges that he and other A2Z drivers used A2Z's limousines, gas cards, and insurance cards in the course of their work, neither party has put on any evidence to support or rebut this assertion.

The third economic realities factor weighs in favor of a finding that Beall was an employee of A2Z. Beall has proffered evidence that he was paid on an hourly (as opposed to per-ride) basis at a rate of $10 per hour, and that he was paid by A2Z on a periodic basis. Plaintiff's Supplemental Briefing at 10, 15. It therefore appears that Beall's ability to profit from his work for A2Z was determined entirely by how many hours A2Z scheduled Beall to work. See *Hobbs*, 946 F.3d at 832 (affirming the district court's finding that "this factor weighed in favor of employee status because [the defendant] fixed the [the plaintiffs]' hourly rate and schedule," among other reasons).

The parties do not put on any evidence as to the fourth economic realities factor. Other courts, however, have found that the nature of the job that Beall performed at A2Z—providing limousine driving services—is such that it requires

minimal specialized skill and initiative.  See, e.g., *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 143 (3d Cir. 2020) (affirming the district court's finding that "[a]s limousine drivers, the service [the plaintiffs] render does not really require a special skill.").  Accordingly, the court concludes that on the present record, the fourth economic realities factor supports a finding that Beall was an employee.

Finally, the fifth economic realities factor is neutral; neither side has put on any evidence or asserted any allegation as to the permanency of the working relationship between Beall and A2Z.

Accordingly, because the first, third, and fourth economic realities factors weigh in favor of a finding that Beall was an employee, the court concludes that there is a genuine dispute of fact as to whether Beall was an employee or an independent contractor.

       c. *Whether A2Z Engages in an Industry Affecting Commerce*

To be considered an employer under Title VII, a defendant must be "engaged in an industry affecting commerce." *Arbaugh*, 546 U.S. at 504-05 (quoting 42 U.S.C. § 2000e(b)).  It is a rare occasion that Title VII's "affects commerce" requirement poses a bar to suit.  *Equal Employment Opportunity Commission v. Service Temps Inc.*, 679 F.3d 323, 331 n.9 (5th Cir. 2012) (citing *E.E.O.C. v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990)).  Here, the defendants do not dispute that A2Z advertised jobs on the company's Facebook page; that fact alone is sufficient to establish that A2Z is

engaged in an industry affecting commerce. *See id.* at 330-31 ("[The defendant]'s advertising on an open website with the potential, or even intent, to draw residents of other states to Texas in search of employment is enough to clear the 'very low' bar that defines economic activity affecting interstate commerce.").

### III.  CONCLUSION

In accordance with the foregoing, the defendants' motion for summary judgment is **GRANTED** with respect to the plaintiff's claims against Jimmy Chauhdry, and **DENIED** with respect to the plaintiff's claims against A2Z Limousine Trans.  The court concludes that genuine disputes of fact remain as to whether A2Z employed 15 or more employees for each working day in each of twenty or more calendar weeks in 2012 or 2013, and whether Beall was an employee or an independent contractor.

**SO ORDERED**.

June 29, 2020.

*/s/ A. Joe Fish*
A. JOE FISH
Senior United States District Judge